**FILED**
**Mar 30, 2026**
**09:06 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | |
|---|---|
| **JEROME MONROE**<br>        **Employee,** | **Docket No. 2024-80-7306** |
| **v.** | **State File No. 860422-2024** |
| **KELLOGG COMPANY,**<br>        **Employer.** | **Judge Allen Phillips** |

## COMPENSATION ORDER

The Court held a compensation hearing on March 3, 2026, where the only issue was whether Mr. Monroe willfully violated a safety rule. For the reasons below, the Court holds he did not and awards some of the benefits he requested.

### History of Claim

Mr. Monroe was a maintenance mechanic. On September 9, 2024, the operator of a rice dryer advised that rice was leaking from one of the machine's doors. Mr. Monroe found the door was open because of a broken bolt. He and another mechanic decided they would hold the door with zip ties while repairing it.

When the other mechanic left to get zip ties, Mr. Monroe noticed the gasket that sealed the door laying on the floor. He removed his gloves, picked up the gasket, and attempted to place it back in position. A spinning screw drive inside the machine then caught his right hand and severed his middle finger.

Kellogg obtained Mr. Monroe's verbal statement in the presence of several people, including the other mechanic, the machine operator, and Claudia Langarica, Kellogg's safety and health manager. The job titles of the other attendees were not included, and they were not called as witnesses.

In his statement, Mr. Monroe said the operator stopped the machine and he

began work on the broken bolt. The operator then commented he would need to restart the machine "before the food got hard," and the other mechanic left to get the zip ties. At that point, Mr. Monroe tried to replace the gasket but said he did not know the machine was operating. He also said he did not believe he had to lockout the machine because he was not crossing the "outer guard," but he admitted a lockout would have prevented his injury.[1]

Kellogg terminated Mr. Monroe for violations of the company's "Plant Safety Absolutes Policy" and "Plant Rules." Specifically, he violated lockout procedures and reached into moving equipment.

Mr. Monroe testified that an outer door, also called a guard, was not present, and its absence alerted him that a lockout was not required. He worked on many machines in Kellogg's massive facility, and not all require lockouts. He added that the plant had just returned from a three- to four-day "down," where all machines were serviced. He thought that if the door needed a guard, then the mechanic who serviced it during the shutdown would have either replaced it or notified them that it needed to be.

On cross-examination, Mr. Monroe said a mechanic should lockout a machine if "anything dangerous" were present, but he consistently maintained the guard was not there "[to tell] me to stop" for a lockout. He also admitted the machine had multiple warning placards regarding lockout points, including one beside the switch controlling the "screw conveyor" that injured him, and step-by-step instructions for servicing the machine. He never wavered in his belief that the door was not a "lockout" door.

Kellogg contended the outer guard was in place and offered photographs of it and the multiple warning notices. Mr. Monroe disputed the timing and authenticity of the photograph of the guard, and he denied any photographs were shown to him during the interview.

Ms. Langarica confirmed her presence at the meeting with Mr. Monroe but said she had no role in his termination. She did not say who did. She identified the photographs but hesitated several seconds before saying the photograph showing that the guard in position was taken the day of the accident. She also explained how

---

[1] Mr. Monroe agreed that Kellogg included lockout procedures in its safety rules. The procedure requires the mechanic to place a lock on the power switch to prevent it from operating while the mechanic works on the machine.

the guard acts as an outer door and the photograph showed it attached in the same location as the broken bolt. The photographs made clear that no one could access the inner door if the guard were in place.

Ms. Langarica said Mr. Monroe should have locked out the machine because he put himself in harm's way. She also said one might easily determine that the machine is running because it is loud and hot.

Mr. Monroe is 53 years old and attended technical school and some college classes. He has advanced OSHA safety training and has been a maintenance mechanic for several years. He testified he always thinks of safety and had never been disciplined before. He said he would have done nothing to risk his job that paid him over $200,000 per year. He now earns less than half that salary at another mechanic job.

Kellogg initially paid medical and temporary benefits but stopped paying after the termination. Kellogg asserted Mr. Monroe's willful misconduct and willful failure to use a safety device bars his recovery under Tennessee Code Annotated sections 50-6-110(a)(1) and (4) (2025).

*Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012), provides the elements of Kellogg's defense. Of those, Mr. Monroe admitted he knew of the lockout rules, the danger involved in violating them, and that Kellogg enforced the rules. But he maintained the lockout rule should not apply in this situation because the absence of the guard meant he could safely work on the door without locking out the machine. He further argued that the absence of the guard meant he had a valid excuse for violating the lockout rule, even if it did apply.

He argued Kellogg bore the burden of showing he lacked a valid excuse. He pointed out that Kellogg did not call the machine operator and the other mechanic, and he questioned when the photographs were taken because they bore no time and date stamp.

Kellogg called this a "classic case" of a willful safety rule violation, comparing the facts to those of *Mitchell*. In *Mitchell*, the employee consciously and deliberately removed his safety gloves and was injured as a result. *Id.* at 455. In its brief, Kellogg quoted *Mitchell*: "The lack of a valid excuse for the failure to use a safety appliance or device, when the first three elements have been satisfied, amounts to willfulness." *Id.*

3

Kellogg also cited *Dennison v. Packaging Corporation of America*, 2020 TN Wrk. Comp. App. Bd. LEXIS 60 (Oct. 2, 2020), where the employee was injured when he failed to lock out a machine. That employee claimed he had a valid excuse for not following the rule because another employee had already locked out the machine, meaning he did not have to. *Id.* at *12.

Mr. Monroe countered with *Roper v. Allegis Group*, 2017 TN Wrk. Comp. App. Bd. LEXIS 14 (Feb. 10, 2017), where the Appeals Board said that lack of a valid excuse to follow a safety rule is not necessarily a willful failure. Instead, the Board called that "an overbroad interpretation" of *Mitchell* that would allow employers to deny claims where the employee negligently or recklessly violated a safety rule.

Mr. Monroe requested an award of original and increased permanent partial disability benefits, and additional temporary disability benefits from when Kellogg stopped paying them until he reached maximum medical improvement on December 17, 2025.

Kellogg argued that if Mr. Monroe were to receive benefits, he is limited to only an original award equal to his impairment rating because his misconduct prohibits an award of increased benefits. § 50-6-207(3)(D)(ii). Further, Kellogg properly stopped paying temporary disability benefits because of Mr. Monroe's termination for misconduct.

Mr. Monroe had a 5% impairment rating, did not return to work at the same or greater wage, was over 40, and his weekly compensation rate was $1,237.

**Findings of Fact and Conclusions of Law**

Mr. Monroe must establish all elements of his claim by a preponderance of the evidence. *Id.* § 50-6-239(c)(6). Kellogg bears the burden of proving its defenses. *Id.* § 50-6-110(b).

Both parties emphasized the presence or absence of the guard, and the evidence does not preponderate one way or the other. But the Court finds the presence of the guard is not controlling, because the evidence *is* clear that the malfunctioning inner door could only be accessed if the guard were removed. Thus, the controlling question is what Mr. Monroe did when the guard was not in place.

Mr. Monroe initially worked on the machine after the operator shut it down. However, he admitted the operator said he needed to restart it, and the evidence shows the sound and heat of the machine left no doubt it was on when he tried to replace the gasket. Given those facts, was Mr. Monroe's attempt to replace the gasket on a running machine a willful act?

Kellogg said it was, citing *Mitchell* and *Dennison*. However, in *Mitchell*, the employee consciously and deliberately removed his safety gloves in direct contravention of a rule. Mr. Monroe did not make a conscious decision to violate the lockout rule but instead made no reasoned decision at all. He simply grabbed the gasket and tried to put it on the door without stopping to think of the danger.

The *Dennison* employee deliberately ignored the lockout rule and offered no valid reason why. Mr. Monroe's decision was glaringly poor, but he did not consciously decide to work on the machine without locking it out.

Kellogg cited *Mitchell* for the proposition that lack of a valid excuse constitutes willfulness. The Appeals Board rejected that argument in *Roper,* holding "an employee's negligent or reckless actions generally are not enough to defeat a claim for workers' compensation benefits." 2017 TN Wrk. Comp. App. Bd. LEXIS 14, at *11.

The Court finds that Mr. Monroe did not act willfully but he rather acted recklessly when he tried to replace the gasket while the machine was running. A mechanic with Mr. Monroe's training and experience should have known better than to place himself in that position of danger. He exhibited a very poor lapse in judgment and failed to exercise reasonable care, which is, by definition, negligence. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009).

Thus, Mr. Monroe is entitled to recover benefits. He has a 5% impairment and is entitled to an original award of permanent disability benefits based on that rating, 22.5 weeks, at the weekly rate of $1,237, or $27,832.50. He is also entitled to reasonable and necessary future medical expenses.

The Court finds Mr. Monroe cannot recover increased benefits because section 207(3)(D)(ii) does not allow an award when the employee's loss of employment is due to his misconduct. Willful misconduct is not required.

Kellogg was entitled to enforce its rules, and temporary partial disability benefits would have ceased as of the date of termination. *Woodard v. Freeman*

*Expositions, LLC*, 2021 TN Wrk. Comp. App. Bd. LEXIS 21, at *9 (July 16, 2021). However, the parties agreed he never received temporary partial disability benefits, and Mr. Monroe is entitled to additional temporary total disability benefits. Payments stopped on October 7, 2024, and he reached maximum medical improvement on December 17, 2024, a period of ten weeks and one day, or $12,543.18 (10.14 x $1,237).

**IT IS, THEREFORE, ORDERED** as follows:

1. Kellogg shall pay Mr. Monroe an original award of permanent partial disability benefits equal to his 5% impairment rating, or $27,832.50. Mr. Monroe's claim for enhanced benefits is denied.

2. Kellogg shall pay Mr. Monroe additional temporary disability benefits for October 7, 2024, through December 17, 2024, a period of ten weeks and one day, in the total amount of $12,543.18.

3. Mr. Monroe's attorney is entitled to 20% of the above awards as fees.

4. Kellogg shall furnish Mr. Monroe with reasonable and necessary future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A).

5. The Court taxes the $150.00 filing fee to Kellogg, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2026) within five business days of this order becoming final, and for which execution might issue if necessary.

6. Kellogg shall file a Statistical Data Form (SD2) with the Court Clerk within ten business days of the date this order issues.

7. Unless appealed, this order shall be final 30 days after entry.

**ENTERED March 30, 2026.**

_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Diagram of machine showing lockout points
2. Photograph of door guard
3. Photograph of Mr. Monroe's lock and keys
4. Wide angle photograph of machine
5. Photograph of screw drove power switch
6. Copy of Mr. Monroe's training certificate
7. Photograph of gasket, screw drive, and door handle
8. Photograph of area where accident occurred
9. Photograph of warning placards
10. Transcript of meeting with Mr. Monroe
11. Termination letter

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as indicated on March 30, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| William B. Ryan, Employee's Attorney | X | billy@donatilaw.com rebecca@donatilaw.com |
| Jared S. Renfroe, Employer's Attorney | X | jrenfroe@spicerfirm.com imiller@spicerfirm.com |

_____
**PENNY SHRUM, COURT CLERK**
**Court of Workers' Compensation Claims**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____     ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## Affidavit of Indigency

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $_____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

Automobile       $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House            $ _____     (FMV) _____

Other            $ _____     Describe:_____

11. My debts are:

Amount Owed           To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                                RDA 11082